**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

United States of America,        ) Criminal Action
                                  ) No. 1:22-cr-00244-TNM
                    Plaintiff,    )
                                  ) **Arraignment/Initial**
vs.                               ) **Status Hearing** (via Zoom)
                                  )
Hatchet Speed,                    ) Washington, D.C.
                                  ) **July 21, 2022**
                    Defendant.    ) Time:  3:30 p.m.
_____


**Transcript of Arraignment/Initial Status Hearing** (via Zoom)
**Held Before**
**The Honorable Trevor N. McFadden** (via Zoom)
**United States District Judge**


A P P E A R A N C E S

For the Government:      **Alexis J. Loeb**
(via Zoom)               UNITED STATES ATTORNEY'S OFFICE
                         FOR THE NORTHERN DISTRICT OF CALIFORNIA
                         450 Golden Gate Avenue, 11th Floor
                         San Francisco, California 94102

For the Defendant:       **Courtney Dixon**
(via Zoom)               **Brooke Rupert**
                         OFFICE OF THE FEDERAL PUBLIC DEFENDER
                         1650 King Street, Suite 500
                         Alexandria, Virginia 22314
_____

Stenographic Official Court Reporter:
(via Zoom)               Nancy J. Meyer
                         Registered Diplomate Reporter
                         Certified Realtime Reporter
                         333 Constitution Avenue, Northwest
                         Washington, D.C. 20001
                         202-354-3118

1                    P R O C E E D I N G S

2              (REPORTER'S NOTE:  This hearing was held during the
    COVID-19 pandemic restrictions and is subject to the
3    limitations of technology associated with the use of
    technology, including but not limited to telephone and video
4    signal interference, static, signal interruptions, and other
    restrictions and limitations associated with remote court
5    reporting via telephone, speakerphone, and/or
    videoconferencing.)

6

7              THE COURTROOM DEPUTY:  Your Honor, we're in Criminal

8    Action 22-244, United States of America v. Hatchet Speed.

9         If I can have the parties identify themselves for the

10   record, beginning with the United States.

11             MS. LOEB:  Good afternoon, Your Honor.  Alexis Loeb

12   for the United States.

13             THE COURT:  Good afternoon, Ms. Loeb.

14             MS. DIXON:  Good afternoon, Your Honor.  Courtney

15   Dixon and Brooke Rupert on behalf of Mr. Speed.

16             THE COURT:  Good afternoon, ladies.  Good afternoon,

17   Mr. Speed.

18             THE DEFENDANT:  Good afternoon.

19             THE COURT:  All right.  We're here for arraignment.

20   Ms. Dixon, have you discussed with your client proceeding

21   virtually for purposes of today's arraignment?

22             MS. DIXON:  Yes, Your Honor.

23             THE COURT:  And, Mr. Speed, are you comfortable

24   proceeding virtually rather than in person?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  I do think it's appropriate for us

2    to proceed virtually in light of the authorization laid out in

3    the CARES Act and the concerns about having defendants travel

4    from out of state for such a straightforward hearing.

5          Mr. Speed, I'm going to ask the courtroom deputy to

6    arraign you in a moment.  This will be directed to you, but

7    typically your attorney responds on your behalf.

8          Mr. Hopkins.

9          THE COURTROOM DEPUTY:  Thank you, Your Honor.

10         Mr. Speed, sir, you are being charged with violating

11   Title 18 of the U.S. Code § 1752(a)(1), entering and remaining

12   in a restricted building; Title 18 of the U.S. Code

13   § 1752(a)(2), disorderly and disruptive conduct in a restricted

14   building; Title 40 of the U.S. Code § 5104(e)(2)(D), violent

15   entry and disorderly conduct in a Capitol Building; Title 40 of

16   the U.S. Code § 5104(e)(2)(G), parading, demonstrating, or

17   picketing in a Capitol Building.

18         Either Ms. Dixon or Ms. Rupert, do you waive formal

19   reading of the charges?  And if so, how does your client plead?

20         MS. DIXON:  We do, Your Honor; and Mr. Speed pleads

21   not guilty at this time.

22         THE COURT:  Okay.

23         THE COURTROOM DEPUTY:  Thank you.

24         THE COURT:  Ms. Dixon, have you made a Rule 16(b)

25   request for discovery?

```
1              MS. DIXON:  We have, Your Honor, I believe.  I'm

2      just -- let me just double-check on that.  Sorry.  I have a lot

3      of screens open.

4              THE COURT:  Ms. Loeb, have you received a request for

5      discovery from defense?

6              MS. LOEB:  Not that I recall, Your Honor.  However,

7      we have made extensive discovery productions so far.

8              MS. DIXON:  I apologize.

9              MS. LOEB:  That --

10              (Indiscernible simultaneous cross-talk.)

11              MS. DIXON:  Sorry, Ms. Loeb.

12         I believe it's usually sent by my paralegal, and I think

13      maybe because this is a D.C. case, it might not have been sent.

14      But, yes, Ms. Loeb has been sending all discovery, and we have

15      been in communication.

16              THE COURT:  So, Ms. Loeb, has all defense -- or

17      defendant-specific discovery been turned over?

18              MS. LOEB:  Not everything, Your Honor.  Since this is

19      our first appearance, I'd like to give you a bit of a

20      background on this case; why it's a bit more extensive than

21      perhaps your typical misdemeanor case or even misdemeanor

22      Capitol riot case.  And I can describe the -- the substantial

23      discovery that we have provided and what remains to be

24      produced.

25              THE COURT:  Okay.
```

1          MS. LOEB:  Your Honor, in this case, the

2     investigation has been going on for over a year, and it

3     includes an undercover operation.  There's been a financial

4     investigation.  There has been aerial surveillance, pole-camera

5     video, and many other types of investigative activities.

6          The reasons for that are beyond the January 6th event

7     that has been investigated.  There's a parallel investigation

8     in another jurisdiction, and as described in the memo we filed

9     relating to Mr. Speed's conditions of release, the government

10     had serious concerns about potential ongoing threats; and

11     threats of violence, specifically, associated with Mr. Speed

12     based on the -- based on some statements he had made and the

13     over $50,000 he spent on firearms-related items in the months

14     immediately following January 6th.  So I'd also say that the

15     investigation is ongoing.

16          Mr. Speed was arrested about a month ago, on June 22nd.

17     On that date the government seized approximately 26 electronic

18     devices.  We are still reviewing them.  Some of them are

19     encrypted, and we are continuing to follow leads from them.

20     So, in addition, there is more evidence and more discovery that

21     is being generated on an ongoing basis.

22          So turning to what we've done so far, I saw Your Honor's

23     standing order.  I believe it was entered on Tuesday.  We

24     issued a -- we did issue a plea offer in this case, and we set

25     a deadline of September 6th for that.

1          Before the case was assigned to Your Honor, we had made

2     a first production of the high-priority items of the

3     defendant-specific discovery.  So that included the Capitol

4     surveillance footage that we'd collected.  I won't go through

5     every item, but just the highlights are:  the Capitol Police

6     surveillance video, the recordings and transcripts that we have

7     from Mr. Speed's meetings with an FBI undercover agent, data

8     from a Google search warrant, some work product that we'd done

9     tracing Mr. Speed through the Capitol, videos from other

10    defendants showing Mr. Speed in the Capitol, and some key

11    subpoena returns.

12         So, then, in the approximately three days since we

13    received Your Honor's standing order, we've made substantial

14    additional productions of discovery.  So we've made three more

15    productions.  The first production included over 800 items from

16    the defendant's FBI file, such as:  physical surveillance

17    reports, FBI interview reports, financial analysis, records

18    relating to weapons purchases, and Mr. Speed's communications

19    with an FBI undercover employee.

20         Today we've made two more productions, and those

21    include:  grand jury records; more interview reports; records

22    of surveillance; the full data received from Google in response

23    to a search warrant, which is almost 10 gigabytes of data;

24    audio and video from Mr. Speed's arrest; and also agents'

25    handwritten notes from many of the interviews.

1          In addition, we have initiated what has been our

2    standard process in Capitol riot cases to provide bulkier items

3    of digital evidence to the defense.  Here that includes the

4    hours and hours of pole-cam video and aerial surveillance

5    footage, as well as all of those -- the approximately

6    26 devices that we seized at the defendant's arrest.

7          So in terms of items -- defendant-specific items that we

8    still have to produce, and setting aside items that may still

9    be added to the case file, so we have, of course, this -- the

10   collection of digital evidence items.  We have reviewed

11   Mr. Speed's phone, but many of the other -- some of the other

12   devices, at least, are encrypted.  So the review of those --

13   those devices is ongoing.  There are other items I'm aware of

14   that we still have to produce or -- or review to determine

15   whether they're discoverable.

16         We have some backup recordings of Mr. Speed's meeting

17   with an undercover agent.  Again, we've produced the primary

18   recordings.  It's possible there could be something

19   discoverable in the backup.  We have some classification issues

20   that we need to resolve relating to some of the other

21   discovery, although I'm not aware of that impacting anything

22   significant in this case.

23         And I think there may be some more handwritten notes,

24   but that's -- that's basically what I'm aware of in terms of

25   the universe of things that we -- we have yet to produce.

1            So I will pause there and see if Your Honor has any

2      questions about the status of discovery.

3            THE COURT:  Not on discovery.  But, Ms. Loeb, can you

4      put the plea offer on the record.

5            MS. LOEB:  Yes, Your Honor.  It's -- it's -- the

6      offer is to one count of -- it's to Count 4 of the information,

7      which charges Mr. Speed with parading, demonstrating, or

8      picketing in a Capitol Building.  There -- and then the

9      offer -- would Your Honor like to hear about any of the other

10     terms of the plea agreement?

11            THE COURT:  Well, are they just standard ones?  I

12     mean --

13            MS. LOEB:  It's -- it's the standard ones that we've

14     included in our other Capitol riot cases, yes.

15            THE COURT:  Okay.  Thank you.

16         So, Ms. Dixon, are you -- do you want to make that

17     Rule 16 request?

18            MS. DIXON:  Yes, Your Honor.

19            THE COURT:  Okay.  So, Ms. Loeb, you now have a

20     formal request from the defense for Rule 16 reciprocal

21     discovery.

22         So I think what I'll suggest is that we set another

23     status conference in two months, as I've suggested in my

24     standing order.

25         Mr. Speed, as -- as the attorneys know, I do give

1    substantial credit to defendants who decide to plead early.

2    And by pleading early, I mean pleading by your next status

3    conference.  Obviously, I'm, by no means, suggesting that you

4    are guilty or you should plead guilty.  You're welcome to go to

5    trial.  But if you do decide to plead guilty, there's certainly

6    advantages to you to doing so sooner rather than later.

7         So why don't we look for a date in late September.  How

8    about Friday, September 30th at 10:00 a.m.?  Does that work for

9    the government?

10        MS. LOEB:  Your Honor, would that be by video?

11        THE COURT:  Well, I wanted to talk with Ms. Dixon

12   about that.  I think if we're -- I mean, if this is just

13   going to be a status conference, that's fine.  If this is going

14   to be a plea to the parading, as I've indicated in my standing

15   order, I intend to go directly to sentencing, and -- so that

16   would need to be in person.  So I guess my inclination is to

17   set this as a virtual, but with the parties understanding, if

18   this is going to be a plea, you need to be here in person for

19   that.

20        Ms. Dixon, does that make sense to you?

21        MS. DIXON:  That makes sense, Your Honor.

22        THE COURT:  All right.  Ms. Loeb, so -- you're

23   available on Friday at 10:00 p.m. -- or 10:00 a.m. -- I'm

24   sorry -- September 30th?

25        MS. LOEB:  Your Honor, if it's -- if it's at all

1    possible, since I'm on the West Coast, if we can do it later

2    than 11:00 a.m., I would be grateful.  But if not, I will make

3    10:00 a.m. work.

4              THE COURT:  Sure.  We can do 2:00 p.m.

5              MS. LOEB:  Yes.  Thank you, Your Honor.

6              THE COURT:  Okay.  And, Ms. Dixon, does 2:00 p.m. on

7    Friday, September 30th, work for the defense?

8              MS. DIXON:  It's fine for me.

9          Ms. Rupert, is that okay with you?

10             MS. RUPERT:  Yes.  Thank you.

11             THE COURT:  Okay.  So we'll set this for a virtual

12   status conference for Friday, September 30th at 2:00 p.m.

13         As I say, though, if this is going to be a plea, A, I'm

14   asking the parties to provide the plea paperwork by Tuesday,

15   September 27th.  Secondly, I'm not at all suggesting that

16   parties need to file memoranda in aid of sentencing, but if

17   there's anything you do want me to consider for sentencing,

18   I'll also ask you to submit that by Tuesday, September 27th.

19   And as -- and as I say, if we would do that, we would convert

20   that to an in-person hearing.

21         Ms. Loeb, anything else we should be discussing today?

22             MS. LOEB:  I just wanted to note, Your Honor, that I

23   have given defense counsel the instructions for accessing the

24   global discovery that applies to all Capitol riot defendants as

25   well.

```
 1              THE COURT:  Okay.  Do you have a motion?

 2              MS. LOEB:  Yes, Your Honor.  The parties -- I would

 3    move that time be excluded between now and September 30th under

 4    the Speedy Trial Act.  The government has produced substantial

 5    discovery; so I think it makes sense to exclude time for the

 6    effective preparation of counsel, to give defense time to

 7    review this discovery, and discuss the outstanding plea offer

 8    with the defendant.  So I would ask that the Court exclude time

 9    in the interests of justice.

10              THE COURT:  Okay.  Ms. Dixon?

11              MS. DIXON:  We have discussed the speedy trial waiver

12    with Mr. Speed, and we agree that based on the amount of

13    discovery received and in order for us to be able to inform

14    Mr. Speed appropriately, it would make sense to waive the

15    speedy trial until the next status date.

16              THE COURT:  All right.  And anything further for

17    defense?

18              MS. DIXON:  No, Your Honor.

19              THE COURT:  Okay.  I do find that it's appropriate to

20    toll time until September 30th in light of the significant

21    discovery that has gone over and the need for the defense

22    counsel to talk with their client about his options, and I find

23    that the interests of justice outweigh the interests of the

24    public and the defendant in a speedy trial, to the extent that

25    I am tolling until September 30th.
```

1          I'll also just say, now that we do have a Rule 16

2     request, Ms. Loeb, I am going to expect the rest of the

3     defendant-specific discovery to go over in a -- within the

4     week, and as I've indicated, I would certainly consider a

5     request for sanctions if they do not.

6          Also, if we're -- there's not going to be a plea at the

7     next hearing, we'll plan to pick a trial date and have the

8     other discussions that I outlined in my standing order.

9          All right.  Thanks, folks.  See you in two months.

10              MS. LOEB:  Your Honor -- Your Honor, I apologize.

11              THE COURT:  Yes.

12              MS. LOEB:  In terms of the rest of the

13    defendant-specific discovery, as I said, we've initiated the

14    process to turn over the 26 electronic devices and substantial

15    other digital items we've seized.  I don't -- I don't know that

16    the process of receiving hard drives from the defense and

17    copying everything over will be complete within a week, but

18    that -- that process is -- that process is underway.

19              THE COURT:  All right.  Yeah.  Obviously, if

20    Ms. Dixon wants to make a motion for sanctions, I'll consider

21    that.  I've been very clear with the D.C. U.S. Attorney's

22    Office.  I know you're not part of that office.  But I've made

23    my expectations clear, you-all -- that you decided to do an

24    incredible investigation on a misdemeanor offense, that's fine

25    for you-all to do, but I will expect you to follow my orders.

1          Thank you.  I'll see you-all in two months.

2             (Proceedings were concluded at 3:49 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER

2

3          I, Nancy J. Meyer, Registered Diplomate Reporter,

4     Certified Realtime Reporter, do hereby certify that the above

5     and foregoing constitutes a true and accurate transcript of my

6     stenograph notes and is a full, true, and complete transcript

7     of the proceedings to the best of my ability.

8

9                         Dated this 16th day of August, 2022.

10

11                        /s/ Nancy J. Meyer
                          Nancy J. Meyer
12                        Official Court Reporter
                          Registered Diplomate Reporter
13                        Certified Realtime Reporter
                          333 Constitution Avenue Northwest
14                        Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25