## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | )   **Case No. 1:22-cr-00244** |
| | ) |
| **HATCHET M. SPEED,** | ) |
| *Defendant.* | ) |

### DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S
### MOTION FOR A PROTECTIVE ORDER

COMES NOW the defendant, Hatchet M. Speed, by counsel Courtney S. Dixon and Brooke S. Rupert, and submits this Opposition to the Government's Motion for a Protective Order, filed under seal on December 27, 2022. The Court should deny in part and grant in part the Government's Motion for a Protective Order as to the Federal Bureau of Investigation ("FBI") undercover employee ("UCE"). The government requests the following:

1. Barring the disclosure of the true identity of the FBI UCE
2. Allowing the UCE to testify under a pseudonym
3. Prohibiting sketching of the UCE
4. Permitting the UCE to testify behind a screen or while wearing a disguise
5. Permitting the UCE to sue a non-public entrance and exit from the courthouse and courtroom; and
6. Precluding Mr. Speed from inquiring into ongoing investigations the UCE is involved in, or biographical and identifying information that would reveal the UCE's identity

Mr. Speed has no objection to an order prohibiting the sketching of the UCE and allowing the UCE to use a non-public entrance and exit. Barring the disclosure of the true identity of the UCE to the defense, allowing the UCE to testify under a pseudonym, permitting the UCE to testify behind a screen or wearing a disguise, and

precluding the defense from inquiring into the UCE's work, biographical, or identifying information would all violate Mr. Speed's rights to a public trial under the First and Sixth Amendment as well as his right to confrontation.

## ARGUMENT

I.  **Barring the disclosure of the true identity of the Federal Bureau of Investigation ("FBI") undercover employee ("UCE") would violate Mr. Speed's rights under the Confrontation Clause of the Sixth Amendment.**

Every accused has a right to know the identity of the witnesses that the government intends to call against him at trial.  Even when the government is not calling someone as a witness, the government generally is required to disclose the identity of participants and material witnesses to the alleged criminal conduct. *Roviaro v. United States*, 353 U.S. 53, 65 (1957).  To determine whether the government must disclose the identity of informants who play an active rather than passive role in the investigation, the court must take into "consideration: (1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." *Id*. at 62.

In *Roviaro v. United States*, for example, the informant "helped to set up the criminal occurrence and had played a prominent part in it…. [H]is testimony might have disclaimed entrapment." *Id*. at 64.  The Supreme Court thus found that the district court's failure to order disclosure of the informant's identity "in the face of repeated demands by the accused for his disclosure" was prejudicial error. *Id*. at 64–65.

In this case, however, the government seeks to withhold from the defense the identity of a witness it seeks to call at trial, thereby denying the defense the ability of independently investigating the credibility and potential bias of the witness. That is not permissible.

"A witness is not the exclusive property of either the government or a defendant; a defendant is entitled to have access to any prospective witness, although in the end the witness may refuse to be interviewed." *United States v. Walton*, 602 F.2d 1176, 1179-80 (4th Cir. 1979). Moreover, one of a defense counsel's constitutional responsibilities is "a duty to make reasonable investigations," *Strickland v. Washington*, 466 U.S. 668, 691 (2000), and seek to interview witnesses who may possess relevant information. *See Porter v. McCollum*, 558 U.S. 30, 39-40 (2009) (constitutional standard of competence requires counsel to interview witnesses); *see also* ABA Standards for Criminal Justice, Defense Function, 4–4.1(a) (4th ed. 2017) ("Defense counsel has a duty to investigate in all cases, and to determine whether there is a sufficient factual basis for criminal charges."). As such, "[t]he right to the assistance of counsel has [] been given a meaning that ensures to the defense in a criminal trial the opportunity to participate fully and fairly in the adversary factfinding process." *Herring v. New York*, 422 U.S. 853, 856–58 (1975).

Withholding the true identity of the UCE from the defense violates not only Mr. Speed's right to confront the witnesses against him, but also his counsel's duty to investigate witnesses in the case. The government concedes in their brief that they have no "indication the defendant himself poses a specific threat to the UCE," Govt.

Mot. at 7, and they remain silent as to why defense counsel should not be provided with the identity of this witness, particularly given that the Court has already entered a protective order.  The government goes on to argue that the identity of the UCE is not exculpatory and that knowing his identity would not assist in impeaching his testimony.  Govt. Mot. at 8.  But it is not up to the government to decide in what manner the defense will seek to defend the case.  The ability to investigate a witness, learn about their personal beliefs and biases, and use that information to challenge the credibility of the witness at trial through cross examination is a normal and required element of our adversarial system.  The government simply has no lawful basis to present testimony at a public trial from unidentified witnesses.

Furthermore, the protective order ensures that the defense is required to maintain the confidentiality of the witness's identity prior to trial.  On July 1, 2022, a protective order was issued in this case which designates "information regarding the government's confidential sources" as "Sensitive" or "Highly Sensitive" and therefore protects the UCE's identity from disclosure outside of the defense team.  *See* ECF. No. 16.

In sum, the government has made no showing that Mr. Speed, nor his counsel, pose an actual threat to the safety of the witness. Therefore the government has no basis to withhold that information from the defense. *See United States v. Sterling*, 724 F.3d 482, 516 (4th Cir. 2013) (Court did not abuse discretion by requiring government to provide defendant and counsel with the true names of CIA operatives).

The Court should deny the request to shield the true identity of the UCE from the defense.

## II.     Allowing the UCE to testify under a pseudonym and behind a screen or wearing a disguise would violate Mr. Speed's right to a public trial under the First and Sixth Amendments.

The settled rule in this country is that "[a] trial is a public event.  What transpires in the court room is public property." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) (citation omitted).  The Sixth Amendment provides the accused with the right to a public trial.  U.S. Const. Amend. VI; *see also Waller v. Georgia*, 467 U.S. 39, 44-47 (1984).  The First Amendment likewise contains an implicit protection against secret trials and secret witnesses. *Press-Enter. Co. v. Super. Ct. of Calif.*, 464 U.S. 501, 508 (1984).

The right to a public trial helps to ensure "that judge and prosecutor carry out their duties responsibly and encourages witnesses to come forward and discourages perjury." *Waller* at 46.  Moreover, "[t]he requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions…" *Id.* at 46 (quoting *In re Oliver*, 333 U.S. 257, 270 (1948)).  As discussed below, the right to a public trial is not limited to excluding the public from the courtroom, but also extends to measures that limit the public's ability to see or understand court proceedings.

To be sure, courts may close a public hearing under strictly defined circumstances to protect other rights or interests. *Id*. at 45. "Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Id*. In fact, the *Waller* Court found that only an overriding interest, based on findings that closure of a courtroom to preserve higher values that are narrowly tailored to serve that interest, can overcome the presumption of openness. *See id*. (quoting *Press-Enterprise Co. v. Superior Ct. of Cal.*, 464 U.S. 501 (1984). The Court went on to say that "the interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id*.

In *Waller*, the trial court closed the courtroom for a suppression hearing at the request of the government to maintain the secrecy of wiretaps which could "involve a reasonable expectation of privacy of persons other than the defendants." *Id*. at 41. The Supreme Court found that in closing the courtroom for that purpose, the trial court failed to give proper weight to Sixth Amendment concerns. Thus, the Waller Court held that four requirements must be met before public access to a criminal proceeding may be denied:

1. The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced;
2. The closure must be no broader than necessary to protect that interest;
3. The trial court must consider reasonable alternatives to closing the hearing; and
4. It must make findings adequate to support the closure.

*Id*. at 48.

   a. **Screening or disguising the witness from the public is a partial closure that would deprive Mr. Speed of his right to a public trial.**

Courts have held that screening or otherwise precluding the public from seeing a witness constitutes a closure subject to the *Waller* test. For example, in *United States v. Lucas*, 932 F.2d 1210 (8th Cir. 1991), the Eighth Circuit measured the constitutionality of the use of a screen during the testimony of an undercover law enforcement officer by whether the trial court made adequate findings of an overriding interest, considered alternatives, and imposed a restriction that was no broader than necessary. *Id*. at 1217.

The government has not provided specific evidence to justify even a partial closure of the trial by shielding the identity of the UCE from the public. Instead, the government uses broad generalizations that are applicable in any case where an undercover employee or confidential source may be called to testify. They posit that if the UCE's identity is exposed, that he "may" no longer be able to operate undercover, and that there "may" be a risk to investigations in which he is involved, and that other undercover employees with whom the UCE worked "might" be endangered. *See* Govt. Mot. At 7. The government has not provided any specific information as to the nature of the potential risk to the UCE's undercover work, whether the UCE remains currently involved in investigations using an undercover identity, and the time period in which the UCE will remain working in an undercover capacity. Nor has the government presented any specific information as to how disclosing the UCE's true identity at trial would adversely affect the witness or their work.

To be sure, numerous courts have recognized that protecting the identity of undercover law enforcement officers may constitute an "overriding interest" for the purposes of the *Waller* test if based upon adequate findings.  However, in such cases, the justification is particularized and specific, and not just general amorphous concerns.  If the Court were to grant the government's motion based on the facts provided it would allow the government to shield the identity of undercover law enforcement agents in every case.  Indeed, the declaration provided by Amillita Marayag, appended to the government's brief, is merely a boilerplate statement that could apply to any undercover law enforcement personnel.  *See* Gov't Mot., Ex. 2. While it may be true that some UCE's have been threatened in the past, the risk to this particular UCE has not been established by the government.  We don't even know for certain whether this individual is even still working in an undercover capacity.

Because the government has failed to put forth an overriding interest which would require the UCE to be shielded from the public, their request should be denied.

b. **Allowing the UCE to testify under a pseudonym is unwarranted in this case.**

Because defendants are entitled to confront witnesses at a public trial and not be convicted based on testimony from unidentified sources, allowing an undercover law enforcement official to testify under a pseudonym would be a radical measure that should occur only under the rarest circumstances. Indeed, "[i]f the agents are permitted to testify under false names, prejudice to the defendants would result from the necessary limitation concerning the scope of the cross-examination as to the

agent's identity, history and credibility, as well as concerning any investigation of the agents in or out of court." *United States v. Napolitano*, 552 F. Supp. 465, 487 (S.D.N.Y. 1982).   While the Court has the authority to permit witnesses to testify under a pseudonym, it can only do so based on specific information "that a threat against a witness was 'actual and not a result of conjecture,'" rather than "generalized statement[s]" that a witness may face a risk of harm. *United States v. Ramos-Cruz*, 667 F.3d 487, 501 (4th Cir. 2012) (authorizing two witnesses in MS-13 case to testify under pseudonyms).

To allow the agents to use assumed names without divulging this to the jury would permit the jury to assume that the agents' identity and background are unimpeachable. Moreover, to disclose that the agents are concealing their names might permit the jury to assume, despite any instructions by the court to the contrary, that any threat to the agents' safety stem from these defendants.   *See United States v. Watson*, 599 F.2d 1149, 1158 (2d Cir.1979).   This would violate the defendants' right to a fair trial by an impartial jury and adversely affect the defendants' presumption of innocence.

However, if the government is required to disclose the identity of the UCE to the defense team, allowing counsel to conduct an independent investigation, the defense can perform its constitutionally-protected role under our adversarial criminal legal system.   In the absence of specific information establishing that the witnesses face an "actual" threat, *see Ramos-Cruz*, 667 F.3d at 501, the Court should not deviate

from the ordinary practice in this country of requiring that witnesses testify openly at a trial under their true name.

### III.    Limiting Mr. Speed's ability to thoroughly cross examine the UCE would be a violation of his Sixth Amendment right to confront the witnesses against him.

Just as fundamental as the right to a public trial is the right of a criminal defendant "to be confronted with the witnesses against him."  U.S. Const. Amend, VI.  One of the central goals achieved by the Confrontation Clause "is the right of cross-examination."  *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).  The United States Supreme Court has emphasized that "[t]here are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal."  *Pointer v. Texas*, 380 U.S. 400, 405; 85 S. Ct. 1065; 13 L. Ed. 2d 923 (1965).  "'The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.'" *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)).  There is a violation of the Confrontation Clause when a defendant is prohibited from engaging in "otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness," that would expose the jurors to facts from which they

could appropriately draw inferences relating to the reliability of the witness. *Delaware v. Van Arsdall*, 475 U.S. 673, 680; 106 S. Ct. 1431; 89 L. Ed. 2d 674 (1986).

Prematurely limiting the scope of cross examination as to the unknown UCE would be detrimental to Mr. Speed's defense.  Indeed, the government seeks to permanently deprive the defense from knowing anything about a key witness in the case – their identity, job title, family background, personal beliefs, or potential biases. While the government's position is that "Speed would not benefit from cross-examining the UCE about personally identifying information or ongoing investigations with which the UCE is involved" and that "the UCE's testimony will not hinge on his credibility," Govt. Mot. at 8, the government simply has no role in determining what would benefit the defense at a trial.  The government's argument, in other words, wrongly assumes that the Executive branch has the ability to determine how best to defend against the criminal charges it has brought. Under our adversarial system, however, the government does not have that power.

Mr. Speed has the right to cross examine any witness who testifies against him and in that examination, the right to impeach those witnesses with information that goes to their bias or credibility.  There should be no exception for this witness.  To create one would be placing the privacy interest of an officer over that of an individual in a criminal proceeding who is facing potentially years in prison.

## <u>CONCLUSION</u>

The government has failed to meet the constitutionally and statutorily required prerequisites to limit Mr. Speed's and the public's access to the FBI

undercover employee.  The government has also prematurely attempted to thwart the cross examination of the UCE in this case.  For the foregoing reasons, Mr. Speed respectfully requests that the Court deny the government's requests to bar disclosure of the identity of the UCE, to allow the UCE to testify under a pseudonym, to permit the UCE to testify while screened or disguised, and to limit the defense's cross-examination of the UCE.

Date: January 17, 2023                    Respectfully submitted,

                                          GEREMY KAMENS
                                          FEDERAL PUBLIC DEFENDER
                                          EASTERN DISTRICT OF VIRGINIA


                                          _____/s/_____
                                          COURTNEY DIXON
                                          Assistant Federal Public Defender
                                          BROOKE S RUPERT
                                          Assistant Federal Public Defender
                                          Office of the Federal Public Defender
                                          Eastern District of Virginia
                                          1650 King Street, Suite 500
                                          Alexandria, VA  22314
                                          (703) 600-0849