UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 22-cr-244 (TNM) |
| v. : | |
| : | |
| HATCHET M. SPEED, : | |
| : | |
| Defendant. : | |

### UNITED STATES' OPPOSITION TO
### DEFENDANT'S MOTION IN LIMINE TO EXCLUDE REGARDING PERSONAL IDEOLOGY AND ONGOING CRIMINAL PROCEEDINGS

The United States opposes defendant Hatchet Speed's motion *in limine*, which asks the Court to bar (1) comments Speed made to an undercover employee of the FBI and coworkers regarding Jews, Antifa, and Black Lives Matter (which Speed labels "Personal Ideology Evidence"), as well as (2) evidence relating to Speed's prosecution in the Eastern District of Virginia, where he faces trial, beginning today, on three counts of possession of an unregistered firearm. *United States v. Speed,* 22-cr-165 (MSN) (E.D. Va.) Both categories of evidence are relevant and admissible, especially here, where the defendant's intent is central to the charges, the evidence at issue explain Speed's motive and intent, and where the Court, not a jury, will try the defendant, lessening any prejudice concerns.

### FACTUAL BACKGROUND

Going to the Capitol on January 6, 2021, Speed said, "was always the plan." It was the plan because Speed wanted to "to protest what was going on in the Capitol… what they were doing was counting the ballots." Speed thought President Trump had been the victim of election fraud. After listening to part of President Trump's speech, Speed marched to the Capitol with members of the Proud Boys. He crossed over the restricted perimeter, passed through tear gas,

and climbed the stairs to the Upper West Terrace. After learning that "Pence betrayed us all" by not overturning the results in the contested states, Speed decided to breach the Capitol. He occupied the building for roughly 40 minutes, leaving only because he believed that Speaker Nancy Pelosi had halted the certification of the electoral college vote.

The FBI later began investigating Speed for his role on January 6 and for firearms violations. It introduced an undercover employee (UCE), who presented to Speed as a like-minded individual. Speed later discussed his participation in the Capitol attack, his firearms purchases, and other topics with the UCE in meetings on March 15, 2022, March 22, 2022, and April 7, 2022.

### *Speed's Comments to the UCE Regarding Antifa, BLM, and Jews*

Antifa featured in Speed's retelling of January 6 to the UCE. Speed blamed "Antifa" for breaking windows, entering off-limit areas on Capitol Grounds, and knocking down the fencing around the Capitol. Speed said that "there was this staircase leading up to the Senate side, where like we knew it was 'off limits' because . . . the staircase was covered by the structure they'd set up the inauguration. . . . but, the Antifa kept sending people up the staircase and trying to get people to come and we're all like 'no, we're not going to follow you'" – although Speed later changed his mind and did. He also described facing off against Antifa with the Proud Boys at the pro-Trump rally in Washington, D.C., in November 2020.

Speed told the UCE that Jews control President Biden and Antifa. Speed explained that Antifa "is the military wing of the community movement which is Jews" and that it is "almost purely Jewish." BLM are the "foot soldiers" of Antifa, "backed by the Jews"; Jews give scholarships to teach "how to be a good Antifa person" and "how to burn down churches." Speed further discussed his belief that President Joe Biden is "being operated" by the "same people" that run Antifa—i.e., members of the Jewish community.

| | |
|---|---|
| UCE: | So if BLM and Antifa—I agree with you, are run by Jews . . . Biden, uh, do nothing—they're—I think they're emboldening them, right? What can we do to—to stop that? Because right now we're at a tipping point-- |
| HS: | [OV] Well-- |
| UCE: | [OV] --I think, in America. |
| HS: | --well, Biden—Biden is, you know, he's being operated by the same people, and so he's happy— |

As evidence of the link between Antifa and Biden, Speed said: "as soon as he was elected, all of a sudden Antifa…disappeared from DC."

Further linking his anti-Semitism to his dislike for the government, Speed told the UCE that he traced back many "incredibly bad polic[ies]" to Jews. He explained that "Biden and his handlers" (i.e., his Jewish handlers) want to go to war in Ukraine to "to put as many Americans in there to get slaughtered as he possibly can…as a meat grinder…where he gets to dump millions of Americans" – but "not Jewish-Americans. All these people, they're not going to war." Speed also noted that the current Secretary of Homeland Security and Attorney General are Jews. The UCE responded, "I can see why they're trying to stomp down, uh, Christianity," and Speed replied, "you can't expect them to do less…if they didn't try to do that they'd be bad Jews." He continued, "but we're not going to have non-Christians ruling over us." He explained, "if I'm in a Christian country…and they're fighting for anti-Christian principals in my country, you better believe I'm going to have a problem with that."

In summary: the Jewish government, led by Biden, is threatening to kill millions of Americans and battling to destroy Christianity. Speed saw the Jews as "everywhere," fighting to destroy Christians, and he was not willing to sit by. He told the UCE that it was "overtly anti-Christian" to be Jewish, and that a Jew is going to "fight for his religion," which means "an attempt to destroy Christianity." Further to this point, Speed spoke extensively of his admiration

3

for Hitler as someone who lived by those beliefs.  He linked Hitler to current events, drawing parallels between Hitler's fight against what Speed called "Antifa" to the current conflict between Antifa and the Proud Boys (with whom Speed allied himself).

To defeat the Jewish threat and topple the government, Speed told the UCE that a violent response was necessary – and that the Jews stood in the way.  On January 6, he said that millions of people should have come to the Capitol, and that "Nancy Pelosi should've resigned out of fear for her life."  That did not happen, Speed explained, because "too many Americans have this idea that we have to be peaceful at all costs."  Americans believe that, said Speed, because the Jews have brainwashed them: "Oh, as soon as we're violent then we lose the moral authority. Who told you that? I'll tell you who tells you that. Every superhero movie made by Jews. Hollywood is controlled by the Jews, you know?...And that's why they make movies where the good guy always, uh, prioritizes non-violence over even winning against the enemy."  Speed, however, wanted violence: "There's no such thing as a non-violent revolution with a non-cooperative government."  The lesson he wanted people to learn from January 6 was "you can't be squeamish about it. If-if you go to war to win, you got to win."  He later told the UCE about a plan for the "Three Percent" (i.e., people willing to take action, modeled after claims about American Revolutionaries), to kill the country's Jewish population.

*Speed's Firearms Purchases*

In the five months that followed the events of January 6 and President Biden's inauguration, Speed purchased at least twelve firearms (rifles, shotguns, and handguns) and spent over $42,000 at firearm and firearm-part retailers. Speed told the UCE that he was "panic buying" firearms around that time.  Speed's purchases included four silencers that he legally purchased and three devices, labeled as "particulate filters" (also known as "solvent traps") that Speed told the UCE he knew how to make into silencers.  Speed told the UCE of a plan to use a

4

"mock trial" to kidnap his enemies, including members of the Anti-Defamation League, and confirmed that his so-called "solvent traps" would be useful for that plan.

## PROCEDURAL HISTORY

On July 18, 2022, Speed was charged by information with four misdemeanors arising from his actions at the Capitol on January 6, 2021. ECF No. 20. A grand jury returned an indictment on January 11, 2023, adding charges of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2).

In the Eastern District of Virginia, Speed was indicted on three counts of possessing of unregistered firearms (in connection with the three "solvent traps"), in violation of the National Firearms Act, 26 U.S.C. §§ 5841, 5861(d), and 5871. Indictment, *United States v. Speed*, 22-cr-165 (MSN) (E.D. Va. Sept. 6, 2022). A first trial resulted in a hung jury. Retrial began today.

The government provided notice of its intent to introduce evidence relating to Speed's anti-Semitism and his firearms purchases on December 27, 2022 and, following Speed's January 11, 2023 indictment, provided a supplemental disclosure on January 14, 2023. While preserving arguments that such evidence was intrinsically intertwined with the charged conduct, the government disclosures also noticed the evidence under Federal Rule of Evidence 404(b).

## ARGUMENT

Speed's statements to the UCE reflecting his views about BLM, Antifa, and Jews are relevant and admissible either as inextricably intertwined or under Rule 404(b). So is evidence of his "panic buying" of firearms between February and May 2021. The government will not belabor either point, but, because this evidence speaks to Speed's motive, corrupt behavior, and intent on January 6, 2021, the Court should deny defendant's motion.

**I.      Legal Standard**

Federal Rule of Evidence 404(b) limits the admissibility of evidence of a defendant's "other crimes, wrongs, or acts" to prove a defendant's propensity to commit a crime or purely to prove a defendant's character. Fed. R. Evid. 404(b); *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000). The limitations of Rule 404(b) only apply, however, when the evidence that the government seeks to introduce is "extrinsic" to the charged crime. *Id.* at 928. That is, Rule 404(b) only limits admission of evidence that is, in fact, of "other" crimes, wrongs, or acts as opposed to "intrinsic" evidence of the crimes charged. *See id.* at 928-29; *United States v. Badru*, 97 F.3d 1471, 1474-75 (D.C. Cir. 1995). Evidence "offered as direct evidence of [a] fact in issue" is not evidence of an "other" crime. *Badru*, 97 F.3d at 1475 (internal quotation marks omitted). "In other words, if the evidence is of an act that is part of the charged offense, it is properly considered intrinsic." *Bowie*, 232 F.3d at 929.

Rule 404(b) prohibits the use of evidence of other crimes, wrongs, or acts to prove a defendant's character, but evidence of other crimes, wrongs, or acts is admissible for any non-propensity purpose, including motive, intent, plan, knowledge, and absence of mistake. *See Bowie*, 232 F.3d at 926, 930 (citing Fed. R. Evid. 404(b)). Rule 404(b) is thus a rule of "inclusion rather than exclusion." *Id.* at 929. Specifically, "[a]lthough the first sentence of Rule 404(b) is 'framed restrictively,' the rule itself 'is quite permissive,' prohibiting the admission of 'other crimes' evidence 'in but one circumstance' — for the purpose of proving that a person's actions conformed to his character." *Id.* at 929-30 (quoting *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (*en banc*)); *accord United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) ("[A]ny purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character") (*quoting United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original)). Evidence that falls within Rule

6

404(b) may be introduced during the government's case-in-chief, including to anticipate a defendant's denial of intent. *See United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief"); *see also United States v. Bussey*, 432 F.2d 1330, 1333 n.13 (D.C. Cir. 1970) (noting that Rule 404(b) other crimes evidence should be introduced in the government's case-in-chief).

There is a two-pronged test for determining whether evidence of other acts is admissible under Rule 404(b). First, the evidence must be "probative of a material issue other than character." *Miller*, 895 F.2d at 1435 (citation omitted). Second, the evidence is subject to the balancing test of Federal Rule of Evidence 403, which renders it inadmissible only if the prejudicial effect of admitting the evidence "substantially outweighs" its probative value. *Id*. Furthermore, it is not enough that the evidence is simply prejudicial; the prejudice must be "unfair." *Cassell*, 292 F.3d at 796 (quoting *Dollar v. Long Mf'g, N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) for the proposition that "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be "unfair."); *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) ("[T]he Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value.") (citations and punctuation omitted) (emphasis in original).

The prejudice concerns of Rule 403, however, have "a highly limited application, if any at all, in a bench trial." *United States v. MacAndrew*, No. 21-cr-730 (CKK), 2022 WL 17961247, at *3 (D.D.C. Dec. 27, 2022) (citation omitted). *See, also, e.g., United States v. DNRB, Inc.*, 895 F.3d 1063, 1068 (8th Cir. 2018) ("[W]e presume that a judge conducting a bench trial will use evidence properly, mitigating any prejudice.").

**II.     Speed's Statements of "Personal Ideology" to the UCE Are Intrinsic to the Charged Crimes**

The "Personal Ideology Evidence" is intrinsic, and admissible because it is evidence of facts at issue – Speed's mental state when he stormed the Capitol. The charges Speed faces put his intent front and center, particularly the charge of obstructing an official proceeding. At trial, to prove a violation of 18 U.S.C. § 1512(c)(2), the government will be required to prove beyond a reasonable doubt that Speed "obstruct[ed], influence[d], or impede[d]," an official proceeding, or attempted to do so, and that he did so "corruptly." 18 U.S.C. § 1512(c)(2). As the Court instructed the jury in *United States v. Hale-Cusanelli,* 21-cr-37 (TNM), "to act 'corruptly,' the defendant must use unlawful means or have a wrongful or an unlawful purpose, or both. The defendant must also act with 'consciousness of wrongdoing.'" Final Jury Instr., *Hale-Cusanelli*, ECF No. 84 at 27. The government must also show, *inter alia*, that Speed "intended to obstruct or impede the official proceeding." *Id.*

In the context of his conversations with the UCE, Speed made clear that he views President Biden, Antifa, BLM, and the Jewish community as different spokes of the same wheel, all conspiring to ruin the country and threatening to destroy white Christians. Biden is operated by Jews, Jews want to destroy Christianity; Speed wanted to stop Biden from taking power -- *i.e.*, by obstructing the official proceeding.

Speed's acknowledgment of his unlawful purpose on January 6 also implicates his views of the Jewish community. Speed hoped the crowd would grow, menacing Congress such that Nancy Pelosi would resign "in fear for her life." Speed told the UCE he blamed Jews for preventing that violence: because the Jews control Hollywood and have put out too many superhero films praising nonviolence, which have essentially brainwashed Americans. Speed's

comments about the Jews and nonviolence are thus evidence of his unlawful purpose on January 6 (to make members of Congress fear for their lives), and intrinsic evidence of his corrupt intent.

    **III.**    **If Rule 404(b) Applies, Speed's "Personal Ideology" is Admissible for Nonpropensity Purposes, and Rule 403 Does Not Bar Its Admission**

In the alternative, the Personal Ideology Evidence is probative of Speed's motive, intent, plan, knowledge, and absence of mistake in committing that offense, as well as the misdemeanor offenses with which Speed stands charged. *See* Fed. R. Evid. 404(b)(2). Evidence admitted under Rule 404(b) need only to be relevant to a nonpropensity purpose; that is, the evidence must have a "tendency to make" a fact of consequence "more … probable." *United States v. Smith*, No. 19-324 (BAH), 2020 WL 5995199, at *16 (D.D.C. Oct. 9, 2020) (quoting Fed. R. Evid. 401).

Speed's views of Jews, Antifa, and BLM are admissible under Rule 404(b) for several non-propensity purposes, including motive, intent, Speed's identity at the Capitol, and absence of mistake. Speed stormed the Capitol on January 6, 2021 to disrupt the peaceful transfer of power to President Biden, whom he believed rose to power through election fraud and was "operated by" the Jews. Speed was willing to act "corruptly" to achieve his goal and stop the certification in part because he felt so passionately that he needed to defend himself and the United States against the country's Jews. He did not want the person he saw as a puppet of the Jews to take power. Speed also thought more violence was needed on January 6 to pressure Congress to stop the certification, but that it did not materialize because Jews lulled Americans into support for nonviolence. Speed's statements make more probable his purposeful, corrupt effort to obstruct, impede, or interfere with an official Congressional proceeding.

Speed's deeply held anti-Semitism was thus a core part of his motive on January 6. He told the UCE he believed that America, a Christian country, was locked in battle with the Jews,

who are intent on destroying Christians. Speed was motivated to act to stop a fraudulent transfer of power to an individual whom he believed was determined to send millions of white Christian Americans to the "meat grinder."

On January 6, moreover, Speed blamed Antifa for trying to incite himself and other rioters. His discussions of Antifa are also evidence of Speed's presence at the Capitol; he described reacting at the Capitol to what Antifa was doing. (For example, "Antifa kept sending people up the staircase and trying to get people to come. And we're all, like, "No, I'm not—not going to follow you."). Speed also told the UCE that he believed that Antifa was the Jews' military wing, and that it supported Biden. Speed's opposition to Antifa is thus probative of his opposition to President Biden, opposition that he felt so fervently that it motivated him to try to block the peaceful transfer of power. Speed also mentioned Antifa when discussing his attendance at pro-Trump rallies in Washington, D.C., in November and December 2020; his attendance at the rallies is further evidence of his support for Donald Trump and opposition to President Biden is relevant to his desire to stop the transfer of power. [1]

Rule 403 does not bar the admission of this evidence. As with any evidence admitted under Rule 404(b), there is inherent risk of prejudice to the defendant. *See United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995). The portion of the Rule 403 balancing test concerning unfair prejudice, though, "has a highly limited application, if any at all" in a bench trial. *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 567 F. Supp. 3d 248, 258 (D.D.C. 2021) (citing *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994); *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. Unit A Jan. 1981) (holding that Rule 403 "has no

---

[1] The government does not agree with Speed's allegations concerning the role played by "Antifa" in the Capitol Attack. And the fact that other individuals (whom Speed believes were "Antifa") also attacked the Capitol would not excuse Speed's decision to also break the law. Speed's statements regarding Antifa have some relevance, though, as an example of Speed's antipathy toward the Jews, who control both Antifa and President Biden.

logical application to bench trials" and that "excluding relevant evidence on the basis of 'unfair prejudice'[in a bench trial] is a useless procedure")). The Court thus should not exclude Speed's "Personal Ideology Evidence" based on concerns about unfair prejudice. Unlike a jury, the Court cannot be shielded entirely from this information (indeed, it must assess it to rule on this motion), and the Court is well practiced in setting aside any personal views and making decisions based on the law and the relevant facts. *See, e.g., Williams v. Illinois,* 567 U.S. 50, 69–70 (2012) ("There is a well-established presumption that the judge has adhered to basic rules of procedure, when the judge is acting as a factfinder" (citation omitted)).

The government will limit its presentation of Speed's anti-Semitism (which was indisputably extensive – in meetings with the UCE, Speed extolled Hitler, heartily recommended *Mein Kampf,* denied the Holocaust, described Jewish conspiracies in the banking system, outlined a plot to murder the country's entire Jewish population, among other statements). The focus at trial will be on Speed's knowledge of the certification, his belief that the presidential election was marred by fraud, and his ultimate embrace of illegal means and purposes to achieve his goal of stopping the certification. The government will introduce limited evidence of anti-Semitism, focusing on what is most directly relevant to Speed's motive and intent, establishing (1) Speed's opposition to President Biden; (2) the link between President Biden, Antifa, and the Jews; (3) that Speed's anti-Semitic beliefs were deeply felt, such that they would motivate him to commit crimes on January 6 – this was not casual anti-Semitism; (4) that Speed thought violence was needed on January 6 (which the Jews were responsible for preventing); (5) that Speed blames Jews for bad government policies.[2] The government will not introduce comments Speed made to co-workers. But the government should be allowed to establish Speed's anti-Semitism

---

[2] In addition, to the extent Speed contests his identity at the Capitol, Speed's references to his personal observations of Antifa on January 6 are one way the government could rebut that claim.

Case 1:22-cr-00244-TNM   Document 42   Filed 01/17/23   Page 12 of 14

and the links between that anti-Semitism and Speed's actions, motive, and intent on January 6.

The government is mindful of the Court's ruling in *Hale-Cusanelli,* which also involved an individual who breached the Capitol and expressed strong anti-Semitic beliefs. At the May 6, 2022 pretrial conference in that case, the Court ruled that a defendant's statements about "race, religion or women or Nazis," would be excluded pursuant to Federal Rule of Evidence 403, whereas "political" statements, including statements "about a political party, about civil war," would be admitted. *Hale-Cusanelli,* 21-cr-37, May 6, 2022 Pretrial Conf. Tr., ECF No. 82, at 16. The government stated that some of the statements that it would seek to introduce arguably fell into "both categories"—that is, some statements both expressed a "political" viewpoint and could be interpreted as racist, misogynistic, or antisemitic. *Id.* at 15. The Court directed the parties to "work out" the differences and raise any issues where a "question" as to the admissibility of specific statements remained. *Id.* at 16. At trial, a confidential the Court ultimately admitted certain statements, such as the defendant's statement that "Democrats, Joe Biden, the Jews" are all the same. The government explained that this was "a political statement that the Democratic Party is backed by Jewish interests, and that is [the defendant's] problem with Joe Biden." *Hale-Cusanelli,* 21-cr-37, June 3, 2022 Trial Tr., ECF No. 95, at 766. So too here: defendant's "problem with Joe Biden" appears to be that he is "operated by" the Jews.

While similar in some respects, *Hale-Cusanelli* is distinguishable here for two primary reasons that should permit the introduction of additional Personal Ideology Evidence here. The Court was concerned that Hale-Cusanelli's anti-Semitic statements would "prejudice him in the jury's eyes," and excluded them on Rule 403 grounds. *Id*. Here, there will be no jury. Second, defendant's anti-Semitism is not cumulative evidence, as the Court believed it was in *Hale-Cusanelli*. There, the Court observed that the government argued that Hale-Cusanelli was motivated to obstruct the certification "*either* because he wanted a civil war *or* because he

12

thought President Biden was a puppet of Jewish interests." *Hale-Cusanelli,* Order Denying Motion for Judgment of Acquittal or a For a New Trial, ECF No. 113, at 6 (D.D.C. Sept. 19, 2022) (emphasis added).  For Hatchet Speed, unlike for Hale-Cusanelli, there is no civil war separate from the struggle between Jews and Christians.  They are one and the same.[3]

### IV. Evidence Concerning Speed's Firearms Buying is Admissible.

Certain evidence relating to Speed's firearms case pending the in Eastern District of Virginia is relevant, not barred under Rule 404(b), and, depending on the outcome of Speed's trial, potentially admissible on other grounds.  As explained above, in the five months that followed January 6, Speed went on a firearm-buying spree, purchasing at least twelve firearms (rifles, shotguns, and handguns) and spending tens of thousands of dollars at firearm and firearm part retailers. He later made comments to the UCE that he was "panic buying" around that time because of all the "nonsense" that had occurred at the Capitol.  The fact that Speed felt compelled to spend tens of thousands of dollars arming himself in a "panic" after President Biden was inaugurated tends to show that he did not want that inauguration to happen in the first place – that he wanted to obstruct the certification of the proceeding facilitating the transfer of power to President Biden.   It is therefore admissible under Rule 404(b).[4]

While Rule 403 prejudice concerns are minimal in a bench trial, the government plans to limit the evidence related to the E.D. Va proceedings in several respects.  The government does

---

[3] To clarify, Speed did not storm the Capitol simply because he saw himself as at war with the Jews.  Rather, he stormed the Capitol because he believed there had been election fraud, and he felt betrayed when Vice President Pence did not intercede to change the outcome on January 6. But Speed's anti-Semitism explains why he did not want President Biden to win the election, and his beliefs were so strong and deep that he took intentional action to try to stop that result, and hoped to inspire an even more violent response.

[4] Speed's admission that he engaged in "panic buying" of firearms in the months after "all the nonsense" – the transfer of power to President Biden—is also admissible of intrinsic evidence of Speed's *mens rea* on January 6.

13

not currently plan to introduce evidence of the criminal proceedings themselves or the fact that the "solvent traps" Speed purchased were in fact unregistered silencers. This could change, however if Speed opens the door (for example, by claiming that he only bought legal firearms and firearms parts); (2) testifies in his E.D. Va. trial; or (3) is convicted.

If Speed testifies, his statements would be admissible party admissions. If he is convicted, Rule 609 may allow admission of the conviction. Rule 609 permits "the admission of a defendant's prior convictions for purposes of impeachment, so long as the 'crime . . . was punishable by death or by imprisonment for more than one year' (that is, it was a felony), and 'the probative value of the evidence outweighs its prejudicial effect." *United States v. Ford*, No. 15-cr-25 (PLF), 2016 WL 259640, at *7 (D.D.C. Jan. 21, 2016) (quoting *United States v. Moore*, 75 F. Supp. 3d 444, 453 (D.D.C. 2014) and Fed. R. Evid. 609(a)(1)). If Speed is convicted of one or more felonies in E.D. Va., the government will assess whether those convictions are appropriate for impeachment purposes and, if so, will provide notice under Rule 609.

## CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion.

Respectfully submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:  /s/*Alexis J. Loeb*
Alexis Loeb, CA Bar No. 269895 (Detailed)
Kyle M. McWaters, D.C. Bar No. 241625
Assistant United States Attorneys
601 D Street NW
Phone: (202) 252-6983
Email: kyle.mcwaters@usdoj.gov
           alexis.loeb@usdoj.gov