UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No.: 1:22-cr-244-TNM |
| v. : | |
| : | |
| HATCHET M. SPEED, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S NOTICE REGARDING USE OF
HATCHET SPEED'S RECENT FELONY CONVICTIONS FOR IMPEACHMENT
UNDER FEDERAL RULE OF EVIDENCE 609**

Two days ago, defendant Hatchet Speed was convicted of three counts of possession of an unregistered firearm in the Eastern District of Virginia. *See* Jury Verdict, *United States v. Speed*, 22-cr-165 (MSN), ECF No. 41 (E.D. Va Jan. 18, 2023). The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this notice of its intent to use Speed's prior conviction for impeachment purposes, should he testify at trial, pursuant to Federal Rule of Evidence 609.[1]

**FACTUAL BACKGROUND**

Defendant is charged with crimes related to his role in the attack on the Capitol on January 6, 2021. After having attended rallies in support of Donald Trump with the Proud Boys, Speed planned to go to the Capitol on January 6. Speed claimed the presidential election was marred by voter fraud, and he wanted Vice President Pence to intervene and present alternate slates of electors. After seeing some of President Trump's speech that day, Speed marched to the Capitol.

---

[1] The government is filing this notice now because Speed sustained felony convictions just this week, creating the Rule 609 impeachment issue.

1

He crossed onto Capitol Grounds on the west side, stepping past downed fencing. He experienced the effects of tear gas, multiple times. He climbed stairs next to scaffolding in place for the inauguration, which led to the Upper West Terrace. There, he saw more violence. He then learned that Vice President Pence had not presented alternate elecotrs – and saw this as a betrayal. No longer willing to stand outside and protest, Speed breached the building, overran the police, and "took control." He stayed inside for approximately 40 minutes, leaving only because he believed (falsely) that Speaker Pelosi had called off the certification. Speed hoped the occupation of the Capitol would spark a popular uprising that would lead Pelosi to resign in fear. It did not, and he bemoaned Americans' aversion to violence (which he attributed to Jewish influence).

After January 6 and President Biden's inauguration, Speed began "panic buying" firearms. He purchased approximately 12 firearms between February and May 2021, and spent over $40,000 at firearms and firearms-part stores. Speed's purchases during this time included three unregistered silencers. Speed later told an FBI undercover employee (UCE) that the silencers could come in handy when he carried out a plot to hold "mock trials" for and kidnap his enemies, starting with local targets, such as members of the Anti-Defamation League.

On June 22, 2022, the FBI executed search warrants at Speed's residence and storage unit and recovered the three unregistered silencers. Speed was initially charged with misdemeanors in connection with his role in the breach of the Capitol, and a grand jury later returned an indictment adding a felony charge of obstruction of an official proceeding. Speed was also indicted in the Eastern District of Virginia for three counts of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871, each of which is felony. Indictment, *United States v. Speed,* 22-cr-165 (MSN), ECF No. 1 (E.D. Va. Sept. 6, 2022). On January 18, 2023, a

2

jury in the Eastern District of Virginia convicted Speed on all counts.  ECF No. 141.  Speed was remanded to custody pending his April 13 sentencing.

**ARGUMENT**

Should Speed testify, the government may impeach him with this week's convictions. Rule 609 of the Federal Rules of Evidence allows "for the admission of a defendant's prior convictions for purposes of impeachment, so long as the 'crime . . . was punishable by death or by imprisonment for more than one year' (that is, it was a felony), and 'the probative value of the evidence outweighs its prejudicial effect." *United States v. Ford*, 15-cr-25 (PLF), 2016 WL 259640, at *7 (D.D.C. Jan. 21, 2016) (quoting *United States v. Moore*, 75 F. Supp. 3d 444, 453 (D.D.C. 2014) and Fed. R. Evid. 609(a)(1)).

As the Court of Appeals has observed, Rule 609 "stresses admissibility." *United States v. Lewis*, 626 F.2d 940, 950 (D.C. Cir. 1980). "Courts should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary." *Id.*  In general, concerns about prejudice are lower in a bench trial.  *See, e.g., United States v. DNRB, Inc.,* 895 F.3d 1063, 1068 (8th Cir. 2018) ("[W]e presume that a judge conducting a bench trial will use evidence properly, mitigating any prejudice.").

Some courts in this district have considered the factors set forth in *United States v. Pettiford*, 238 F.R.D. 33 (D.D.C. 2006).  These factors are: (1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; (4) the importance of the credibility of the defendant; and (5) the general impeachment value of the prior crime. *Id.* at 41 (citations omitted).  "The idea underlying Rule 609, whether right or wrong, is

3

that criminals are more likely to testify untruthfully." *Id.* at 42.

Speed's recent conviction is admissible for impeachment purposes pursuant to Fed. Rule. Evid. 609. As an initial matter, the defendant's felony crimes meet Rule 609's initial impeachment threshold, falling well within the ten-year threshold for admissibility. Thus the inquiry turns on whether the probative value of the conviction outweighs its prejudicial effect.

Here, the factors articulated in *Pettiford* (the kind of crime, date of conviction, importance of the witness's testimony, importance of defendant's credibility, and the impeachment value of the prior crime), as a whole, favor admission. In *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983), the D.C. Circuit conducted an exhaustive review of the legislative history of Rule 609 and noted that "Congress believed that all felonies have some probative value on the issue of credibility," and held that "all felony convictions are probative of credibility to some degree." 702 F.2d at 1062 (emphasis omitted). The crimes of conviction here are different from the crimes at issue in this case, lessening the risk of prejudice or improper propensity arguments. The convictions could hardly be more recent. If Speed testifies, his testimony and credibility may be significant – in a recent filing, Speed claimed that his knowledge and intent will be key. Opposition to United States' Motion *in Limine* to Preclude Improper Defense Arguments, ECF No. 40, at 1-2. The final factor is neutral – the impeachment value of possession of an unregistered firearm is not as strong for as a crime of dishonesty, but does suggest, to some degree, an act of concealment and a refusal to follow the law. *See, e.g.*, *Ford*, 2016 WL 259640, at *9 (admitting crimes that "do not involve explicit dishonest acts or false statements" because "these crimes still say something about the defendant's ability to be truthful while under oath").

On balance, given the recency of the conviction and the potential importance of Speed's credibility, the Court should admit the evidence for impeachment purposes, particularly because the danger of prejudice is lower in a bench trial, as the Court will not be misled by irrelevant or prejudicial evidence. Moreover, it is reasonable to expect that the defendant will, through counsel, attack the credibility of officers or other witnesses at trial. To the extent that he is permitted to do that, should the defendant testify, his credibility is implicitly weighed against those witnesses and should be subject to impeachment. To allow defendant to impugn another person without just cause in a criminal offense, while simultaneously allowing him to shield himself from his own criminal convictions that cut against his own credibility, would be unfitting.

## **CONCLUSION**

For the foregoing reasons, the government respectfully notices its intent to impeach the defendant with his prior convictions, pursuant to Fed. Rule. Evid. 609, in the event that he elects to testify.

                                      Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      United States Attorney
                                      D.C. Bar No. 481052

By:  */s/ Alexis J. Loeb*
       ALEXIS J. LOEB
       CA Bar No. 269895 (Detailed)
       KYLE M. McWATERS
       DC Bar No. 241625
       Assistant United States Attorneys
       601 D. Street NW
       Washington, D.C. 20005
       Tel. (415) 436-7168
       Email: alexis.loeb@usdoj.gov
                 kyle.mcwaters@usdoj.gov