## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cr-244 (TNM) |
| | ) | |
| HATCHET SPEED, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MR. SPEED'S MOTION TO DISMISS INDICTMENT FOR VINDICTIVE PROSECUTION

The U.S. government has paraded Mr. Hatchet M. Speed around as a political puppet for the better part of the past year. Given Mr. Speed's inflammatory rhetoric, his documented statements about violence, and his status as a veteran of the armed forces who was allegedly present at the U.S. Capitol on January 6, 2021, the government has sought to make an example of Mr. Speed, trying him multiple times in two different federal districts. And while politics and public pressure often influence prosecutorial decisions, such discretion is subservient to the guarantees of the Due Process Clause under the Fifth Amendment to the U.S. Constitution. *See United States v. Goodwin*, 457 U.S. 368, 380 n.12 (1982). Here, the government crossed a line when it vindictively filed a superseding indictment in the District of Columbia just a few weeks before trial was set to begin, tacking on an 18 U.S.C. § 1512(c)(2) felony charge that carries a potential 20-year prison sentence.

Though the government suggested that it may bring a 1512(c)(2) felony charge as early as the Summer of 2022, it never did. In fact, it even extended the one-count

misdemeanor plea offer beyond the original date. Only after Mr. Speed exercised his constitutional right to trial in the Eastern District of Virginia, and only after the government failed to secure a conviction, did it file a superseding indictment with the new felony charge. This last-minute gamesmanship, which the D.C Prosecutors made less than one week before Mr. Speed's Virginia retrial and less than a month before Mr. Speed's D.C. trial, was made in order to punish Mr. Speed for challenging the inadequacies of the government's case in chief, causing the government great embarrassment.

### *Background*

<u>The Original Charges and the First Plea Offer</u>

In June of 2022, in response to his alleged activities at the U.S Capitol on January 6, 2021, The U.S. government charged Mr. Speed in the United States District Court for the District of Columbia by Criminal Information (the "Original Charges") of the following four misdemeanors:

- 18 U.S.C. § 1752(a)(1) - Entering and Remaining in a Restricted Building or Grounds
- 18 U.S.C. § 1752(a)(2) - Disorderly and Disruptive Conduct in a Restricted Building or Grounds
- 40 U.S.C. § 5104(e)(2)(D) - Disorderly Conduct in a Capitol Building
- 40 U.S.C. § 5104(e)(2)(G) - Parading, Demonstrating, or Picketing in a Capitol Building

On July 19, 2022, AUSA Loeb sent Mr. Speed a plea offer ("First Plea Offer"), under which Mr. Speed would plead guilty to Count Four of the Original Charges: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G). A 40 U.S.C. § 5104(e)(2)(G) violation

carries a maximum sentence of six months of imprisonment, pursuant to 40 U.S.C. § 5109(b); a term of probation of not more than five years, pursuant to 18 U.S.C. § 3561(c); a fine of not more than $5,000, pursuant to 18 U.S.C. § 3571(b)(6); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. AUSA Loeb communicated that the plea offer would expire on September 6, 2022.

On September 6, 2022, having not received an agreement from Mr. Speed with respect to the First Plea Offer, the government filed a separate indictment in the Eastern District of Virginia ("EDVA Indictment"), charging Mr. Speed with three felony counts of unlawful possession of an unregistered silencer as defined under section 921 of Title 18 of the United States Code. That said, on September 12, 2022, six days after the First Plea Offer was supposedly set to expire, AUSA Loeb contacted Mr. Speed's attorneys to inquire if Mr. Speed was still interested in taking the deal. Mr. Speed's attorneys explained to AUSA Loeb that, given the new felony charges filed in the EDVA Indictment, he was not prepared to enter into a plea with respect to the Original Charges.

The Virginia Mistrial and the Superseding Indictment

On December 16, 2022, after a week-long trial ("Virginia Mistrial"), the District Court for the Eastern District of Virginia declared a mistrial after a jury failed to reach a unanimous verdict on charges that Mr. Speed unlawfully possessed unregistered silencers. The government immediately notified Mr. Speed and the court

that it would seek a retrial ("Virginia Retrial"). AUSA Loeb was present during the Virginia Mistrial.

On January 4, 2023, just over two weeks after the government failed to secure a felony conviction in Virginia, AUSA Loeb communicated to Mr. Speed's attorneys that she was "writing to give you a heads up that we plan to seek an indictment of Mr. Speed for obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2)." One week later, and just one week before Mr. Speed's Virginia Retrial was set to commence, the government filed a superseding indictment ("Superseding Indictment") containing the original four misdemeanor offenses from the Original Charges plus an additional felony charge for attempting to and corruptly obstructing, influencing, and impeding an official proceeding in violation of 18 U.S.C. § 1512(c)(2), which carries a maximum sentence of 20 years in prison.

<u>The Virginia Retrial and the Felony Plea Offer</u>

The Virginia Retrial began on January 17 and lasted two days. A jury found Mr. Speed guilty of three counts of unlawful possession of an unregistered firearm (to wit: a silencer, as defined in section 921 of Title 18 of the United States Code). Each felony count carries with it a maximum sentence of 10 years' incarceration.

At the end of the Virginia Retrial, on January 19, 2023, Mr. Speed's attorneys contacted AUSA Loeb and AUSA McWaters (collectively, the "D.C. Prosecutors") to ask if the original plea offer would be re-offered now that a jury had convicted Mr. Speed of three felony offenses. AUSA Loeb responded the following evening stating

that the government "will not re-issue the original plea offer," but would instead offer a plea to the § 1512(c)(2) felony charge.

On January 25, 2023, Mr. Speed, through counsel, conveyed that he would not accept the felony plea offer and that he would exercise his constitutional right to trial. Furthermore, Mr. Speed's attorneys communicated they would seek a continuance so that they could prepare a defense for the added felony charge. And although AUSA Loeb responded that the government would oppose any such motion, this Court granted it, remarking on the lengthy period the government waited before filing its superseding indictment.

### Argument

"The Due Process Clause prohibits prosecutors from 'upping the ante' by filing increased charges in order to retaliate against a defendant for exercising a legal right." *United States v. Slatten*, 865 F.3d 767, 798-99 (D.C. Cir. 2017) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27-28 (1974)). To establish that a prosecution is vindictive, a defendant ordinarily must show "the increased charge was 'brought solely to "penalize" [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 380 n.12).[1] This can be accomplished either directly with "objective evidence that a prosecutor acted in order to punish him for standing on his legal rights" or indirectly

---

[1] It is not necessary that the prosecutor of the case be the one with the genuine animus towards Mr. Speed. It is sufficient that Mr. Speed can show that the prosecutor was "prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse.'" *See United States v. Wilson*, 120 F. Supp. 2d 550, 555 (E.D.N.C. 2000); *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000); *United States v. Aviv*, 923 F. Supp. 35, 36 (S.D.N.Y. 1996) (collecting cases).

with evidence showing "realistic likelihood of vindictiveness," which gives rise to a presumption that the government must then attempt to rebut with objective evidence justifying its action. *Meyer*, 810 F.2d at 1245 (quoting *Blackledge*, 417 U.S. at 27). A "realistic likelihood of vindictiveness" exists when the relevant action by the prosecution "was 'more likely than not attributable to the vindictiveness on the part of' the government.'" *Meadows*, 867 F.3d at 1311 (quoting *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002)).

Here, the government had the supposed factual basis to charge a § 1512(c)(2) felony violation well before the conclusion of the Virginia Mistrial. By then, the government had long known the circumstances and particulars of Mr. Speed's activities on January 6, 2021, choosing only (1) to charge him with four misdemeanors; and (2) to offer a plea deal by which Mr. Speed would plead guilty to one misdemeanor. Only after the government failed to secure a felony conviction at the end of the Virginia Mistrial (which AUSA Loeb attended) did the D.C. Prosecutors tack on a felony charge of their own.

The government's choice to add a serious felony charge around six months after the Original Charges and only after failing to convict in the Virginia Mistrial appears to have been in retaliation for (1) Mr. Speed's vigorous litigation of his possession charges, which includes his constitutional rights to due process, to confront his accusers, and to a speedy trial by a jury of his peers; and (2) Mr. Speed's decision to exercise the same constitutional right to trial in the District of Columbia. *See* U.S. Const. amends. V & VI; 18 U.S.C. § 3161. Because the government failed to convince

a jury of his guilt beyond a reasonable doubt under the crimes alleged, the government simply chose to allege more crimes.

Put plainly, the timing of the government's superseding indictment soundly rebuts any presumption of regularity in this prosecution. This Court is entitled to view with skepticism the decision made to tack on a severe felony charge only after the government failed to initially convince a jury of Mr. Speed's guilt beyond a reasonable doubt. *See Wilson*, 262 F.3d at 315.

## CONCLUSION

Accordingly, Mr. Speed respectfully moves this Court to dismiss the indictment for vindictive prosecution, or, alternatively, to order the government to produce any documentation, records, or communications between the D.C. and the Virginia Prosecutors that would tend to help explain the timing and motive of this prosecution and any animus toward Mr. Speed.

Dated: February 3, 2023.

Respectfully Submitted,

/s/ Courtney Dixon
Courtney Dixon, #1766415
Brooke S. Rupert, VA Bar 79729
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Courtney_Dixon@fd.org
Brooke_Rupert@fd.org